IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TIM DESCHAMPS,

    Plaintiffs,

v.   No. 1:23-CV-1166-WJ-SCY

NEW MEXICO DEPARTMENT OF HEALTH dba
NEW MEXICO BEHAVIORAL HEALTH
INSTITUTE, SUSIE ARCHULETA,
JEREMY GONZALES, and RICHARD VIGIL

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF DESCHAMPS' CLAIMS

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment on Plaintiff Tim Deschamps' Claims (**Doc. 2**). In Defendants' Motion for Summary Judgment (**Doc. 2**), Defendants ask the Court to dismiss all of Plaintiff Deschamps' claims against them. Having considered the parties' briefing and the applicable law, the Court **DENIES** in part and **GRANTS** in part Defendants' Motion for Summary Judgment (**Doc. 2**).

## BACKGROUND[1]

This case involves Defendant New Mexico Behavioral Health Institute's ("NMBHI") termination of Plaintiff Tim Deschamps after the death of a resident who the Court will hereinafter refer to as R.B. Defendant NMBHI is a state-operated facility that, in addition to other services, houses and cares for individuals who need varying levels of supervised care because they cannot

---

[1] The Court takes the background facts from the parties' briefs and those background facts are supported by evidence in the record as stated by the parties. The background facts are either undisputed, or, where genuinely disputed, are viewed in the light most favorable to Plaintiff, the party opposing the grant of summary judgment. *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 964 (10th Cir. 2022). Additionally, the parties raised materiality/relevancy objections to each other's facts. The facts included here have been deemed to be material by the Court and are not disputed unless otherwise noted.

1

care for themselves due to physical and or mental conditions. **Doc. 5 at 3**, **17**. At the time of Plaintiff's termination, he worked as a Recreational Therapist Operational at the Juniper One Unit. *Id.* One of Plaintiff Deschamps' duties as a Recreational Therapist was to supervise residents closely during all activities to ensure safety. *Id.* **at 22**.

On February 3, 2020, NMBHI terminated Plaintiff pursuant to a Notice of Final Action following the death of R.B. who choked while eating several handfuls of Vanilla Wafer cookies. *Id.* **at 4**, **55–61**.

The specifics of R.B.'s death are tragic. On November 23, 2019, Plaintiff was setting up for a coffee social activity with his residents. *Id.* **at 34**. He retrieved a snack cart from the activities closet which had coffee, creamer, sweetener, and Vanilla Wafer cookies on it and wheeled the cart into the activities room for the event. *Id.* After wheeling the cart into the activities room, Plaintiff stepped away from the activities room and the cart to take a phone call on his personal phone from a co-worker. *Id.* Defendant NMBHI has a written policy stating that personal phone calls should not exceed five minutes in length, cell phone use in patient areas is not permitted, and that personal cell phones should be stored in the break room. *Id.* **at 4, 27–28**. While Plaintiff was on the phone, R.B., in his wheelchair, rolled into the activities room unannounced. *Id.* **at 4, 23–24**. There, he discovered the cart of snacks left by Plaintiff and proceeded to stuff several handfuls of Vanilla Wafer cookies into his mouth. R.B. ultimately choked to death on the cookies. *Id.*

On December 3, 2019, Defendant NMBHI conducted an in-house investigation into R.B.'s death. *Id.* **at 4, 23–25**. During this investigation, Plaintiff submitted a voluntary statement in which he stated:

> "I feel that we actually I know we are short of staff. [R.B.] had been on a level for about a couple of months then he was taken off. I Believe he should have been on a level especially after RN Lynn Padilla brought him back from his choking incident."

*Id.* **at 35.** To be "on a level" means constant, continuous 24-hour a day personal supervision. **Doc.7-3 at 4; Doc. 7-2 at 2.** Plaintiff Deschamps also admitted in his voluntary statement that he left the cart with the coffee and Vanilla Wafer cookies unattended to take a 7-minute personal phone call on the Juniper Patio, and that the phone call lasted for approximately 7 minutes. **Doc. 5 at 34, 36**. The investigation concluded that R.B. "ate multiple cookies which were left unattended in the Activities Room by Recreational Therapist Timothy Deschamps as Deschamps stepped outside to take a personal phone call." *Id.* **at 25**.

On January 7, 2020, Plaintiff received a Notice of Contemplated Action, proposing his dismissal for using his personal cell phone in a patient care area and "negligence, resulting with the passing of a Long-Term care resident/patient." *Id.* **at 38**. After Plaintiff received this notice, his lawyer prepared and emailed a response to Jeremy Gonzales, Richard Vigil, Frances Tweed, and Susie Archuleta. *Id.* **at 42–47**. Plaintiff's attorney emailed the response on January 17, 2020. *Id.* **at 42**. This response was timely and received by Defendants. *Id.* **at 5**.

On February 3, 2020, Defendant NMBHI sent Plaintiff a Notice of Final Action, dismissing him from his position as a Recreational Therapist for using his personal cell phone in a patient care area and "negligence that resulted in the passing of a Long-Term Care resident/patient." *Id.* **at 55**. Despite Plaintiff's timely response to the Notice of Contemplated Action, the Notice of Final Action stated that Plaintiff "failed to submit a written response or request an oral response meeting within fourteen (14) calendar days of service." *Id.* **at 58**.[2] Plaintiff Deschamps' attorney then contacted Defendants via email to inquire about the "failure to respond" language in the Notice. **Doc. 7-6**. Defendants did not reply. *Id.*

---

[2] Although both parties acknowledge the presence of this language in the Notice of Final Action, they dispute if it was included because Defendants ignored Plaintiff's response or, if it was included accidentally, despite Defendants considering Plaintiff's response.

Although the Notice of Final Action did not acknowledge Plaintiff's timely response, it did notify Plaintiff of his right to appeal his termination to the State Personnel Board or a union arbitrator pursuant to the New Mexico Personnel Act (the "Personnel Act"), NMSA § 10-9-18A. **Doc. 5 at 58**. Plaintiff did not appeal his termination to the State Personnel Board or a union arbitrator. *Id.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the movant has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). The movant may satisfy its initial burden by producing affirmative evidence negating an essential element of the non-movant's claim. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). In opposing summary judgment, the non-movant cannot rest on mere allegations but "must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (internal quotation marks omitted). "The summary judgment standard requires [the Court] to construe the facts in the light most favorable to the non-movant and to draw all reasonable inferences in its favor." *Beauford*, 35 F.4th at 1261 (citing *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021)). The Court's function at this stage "is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there

4

is a genuine issue for trial." *Anderson,* 477 U.S. at 249. However, the Court need not accept allegations contradicted by objective evidence. *Beauford*, 35 F.4th at 1261 (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## DISCUSSION

Plaintiff asserts the following claims against Defendants: (1) breach of contract, (2) violation of procedural due process under 42 U.S.C. § 1983, (3) violation of the First Amendment under § 1983, and (4) violation of the New Mexico Whistleblower Protection Act ("NMWPA"). **Doc. 1 at 36 – 43**. In his response, Plaintiff concedes that, under existing law, his communications to Defendants are not protected by the First Amendment. **Doc. 7 at 26**. As a result, the Court grants summary judgment on Plaintiff's § 1983 First Amendment claim and addresses Plaintiff's remaining claims below.

### I. Plaintiff Deschamps' § 1983 Procedural Due Process Claim:

Defendants seek summary judgment on Plaintiff's § 1983 procedural due process claim, arguing that Plaintiff cannot show a deprivation of a due process right. **Doc. 5 at 8–9.** At this stage, however, this Court finds that summary judgment is not warranted because there is a genuine dispute of material fact regarding whether Defendants afforded Plaintiff mandatory pre-termination process, specifically a *meaningful* opportunity to invoke the discretion of the decisionmaker.

For Plaintiff Deschamps to prevail on this § 1983 claim, he must establish that (1) Defendants acted under color of state law and (2) Defendants' actions deprived Plaintiff of some federal right. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 937 (10th Cir. 2004) (internal citation omitted). Here, there is no dispute that Defendants acted under color of state law. Thus, the key issue before the Court is whether Defendants actions deprived Plaintiff Deschamps of a federal right – in this instance, a procedural process right.

To establish whether an individual was denied procedural due process, courts first examine if the employee possessed a protected interest such that due process protections were applicable. *Id.* If so, the next step is to determine whether the employee was afforded an appropriate level of process. *Id.* In instant case, it is undisputed that Plaintiff Deschamps had a protected property interest in his employment. Thus, the Court proceeds to the next step, determining whether Plaintiff Deschamps received an appropriate level of process.

When an employee with a protected property interest in his employment is terminated, as Plaintiff Deschamps was in the instant case, that employee is entitled to both pre-termination and post-termination due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985). It is undisputed, however, that Plaintiff Deschamps did not avail himself of the post-termination process available under the State Personnel Act. Consequently, the only issue before this Court is whether Plaintiff received adequate pre-termination process.

In *Loudermill*, the United States Supreme Court examined what type of pre-termination process *must* be afforded to a public employee with a protected property interest in his employment. 470 U.S. 532, 535 (1985). In deciding this issue, the Court described "the root requirement" of the Due Process Clause as being, "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Id.* at 542. The Court elaborated that this requirement encompasses a "meaningful opportunity to invoke the discretion of the decisionmaker" before the termination decision. *Id.* at 543. The Court further specified, "the opportunity to present reasons, either in person or in writing, why the proposed action should not be taken is a fundamental due process requirement." *Id.* at 546.[3]

---

[3] Even outside of *Loudermill*, the Supreme Court has held that due process requires notice and a *meaningful* opportunity to be heard. *See, e.g.*, *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard." (emphasis added)); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

6

In the present case, there is a genuine dispute of material fact regarding whether Defendants afforded Plaintiff Deschamps a meaningful opportunity to invoke the discretion of the decisionmaker before he was terminated. The Notice of Final Action stated that Plaintiff "failed to submit a written response or request an oral response meeting within fourteen (14) calendar days of service." **Doc. 5 at 58**. This language was included in the Notice of Final Action even though Plaintiff Deschamps' attorney emailed a timely written response to Defendants after receiving the Notice. *Id.* **at 42**. Plaintiff Deschamps' attorney then contacted Defendants to inquire about the "failure to respond" language in the notice. **Doc. 7-6**. Defendants did not reply. *Id.* Defendants Susie Archuleta and Jeremy Gonzales explain in their affidavits that the "failure to respond" language was accidently left in the Notice of Final Action even though Defendants considered Plaintiff's response before deciding to terminate him. *Id.* **at 18–19, 53**.

At the summary judgment stage, this Court must avoid weighing the evidence or determining the truth of the matter. Therefore, the Court cannot determine if the affidavits of Susie Archuleta and Jeremy Gonzales, which assert that Defendants considered Plaintiff Deschamps' response before terminating him, outweigh the language in the Notice of Final Action indicating otherwise. This is a credibility determination reserved for a fact finder. Consequently, a genuine dispute remains regarding whether Defendants considered Plaintiff's response before making their termination decision.

Additionally, whether Defendants considered Plaintiff's response is a material fact. Under *Loudermill*, an employee cannot be said to have had a *meaningful* opportunity to invoke the discretion of decisionmaker before he is terminated if the decisionmaker did not consider the employee's written response. As noted in *Hodges v. U.S. Postal Service*, "the deciding official's

---

manner." (emphasis added) (internal quotation marks and citation omitted)); *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("[D]ue process requires, at a minimum, ... a meaningful opportunity to be heard." (emphasis added)).

7

complete failure to consider the appellant's written response to the proposal notice before issuing a decision constitutes—in and of itself—a violation of minimum due process law." 118 M.S.P.R. 591, ¶ 6 (2012). Indeed, allowing an employee to submit a written response and then failing to consider it is analogous to holding a hearing and not permitting the employee to speak—such a process falls short of being meaningful.[4]

Defendants also argue that summary judgment is warranted because Plaintiff Deschamps had access to a post-termination remedy to address any deficiencies in the pre-termination process but chose not to pursue it. While the Court recognizes that Plaintiff could have more effectively ensured that his side of the story was fully considered by appealing to the State Personnel Board, his decision not to do so does not waive his pre-termination due process claim. As established in the *Montgomery* case, "[p]ost-termination remedies, no matter how elaborate, do not relieve the employer of providing the minimal pre-termination procedural protections noted in *Loudermill*." 365 F.3d at 937. *See also Seibert v. State of Okl., ex rel. Univ. of Oklahoma Health Scis. Ctr.*, 867 F.2d 591, 596 (10th Cir. 1989) (explaining that the plaintiff did not waive his right to a pre-termination hearing by failing to pursue post-termination remedies) *abrogated on other grounds by Fed. Lands Legal Consortium ex rel. Robart Est. v. United States*, 195 F.3d 1190 (10th Cir. 1999).

The Court concludes by addressing damages. While a genuine dispute of material fact prevents summary judgment, the Court does not find that Plaintiff Deschamps was wrongfully

---

[4]*See Peery v. Brakke*, 826 F.2d 740, 743 (8th Cir. 1987) (Finding a violation of the plaintiff's pre-termination rights where Plaintiff was called into a meeting with his supervisor, asked to resign due to unsatisfactory work performance, given notice of multiple deficiencies—only one of which had been previously disclosed—and denied the opportunity to respond to the charges); *Washington v. Burley*, 930 F. Supp. 2d 790, 804 (S.D. Tex. 2013) (denying summary judgment on Plaintiff's procedural due process claim because a reasonable jury could conclude that Plaintiff was denied minimum pre-termination process if it found that her employer told her she was not allowed to speak at her pre-termination hearing); *Jaffe v. Cleveland Heights-Univ. Heights City Bd. of Educ.*, 983 F.2d 1066 (6th Cir. 1993) (Merritt, J., concurring) (explaining that summary judgment was properly denied due to disputed facts regarding whether the plaintiff was permitted to respond during his initial hearing).

terminated or that his termination would have been avoided if Defendants had considered his response to the Notice of Contemplated Action.

"Generally, damages for procedural due process violations may include damages arising out of the termination of employment if there is a causal connection between the termination and the failure to provide a hearing." *Montgomery*, 365 F.3d at 937 (internal quotations omitted). Yet, if an employer can establish that the employee would have been terminated even if a proper hearing had been given, the terminated employee cannot receive damages arising out of his termination. *Id.* In this case, a proper hearing would have required Defendants to consider Plaintiff Deschamps' response to the Notice of Contemplated Action; however, the undisputed facts establish that Plaintiff would have been terminated even if Defendants had considered his response.

The Notice of Final Action indicates that Plaintiff was terminated for violating NMBHI cellphone policy and negligence. On November 23, 2019, resident R.B. choked to death on Vanilla Wafers. NMBHI's investigation uncovered that Plaintiff Deschamps had left these Vanilla Wafers unattended in the activities room while he took a seven-minute personal phone call. **Doc. 5 at 25**. Plaintiff's response to the Notice of Contemplated Action does not dispute these facts; in fact, Plaintiff Deschamps admits to these facts in his response. *Id.* **at 46**. Moreover, NMBHI policy explicitly forbids the use of personal cell phones in patient care areas and restricts personal phone calls to no longer than five minutes. *Id.* **at 26–27.**

Since Plaintiff Deschamps does not dispute the facts underlying his termination for violating NMBHI policy and negligence in his response, his response would not have altered the outcome. Accordingly, the undisputed material facts establish that Defendants would have terminated Plaintiff Deschamps even if they considered his response. Thus, although Plaintiff Deschamps' § 1983 due process claim withstands summary judgment, he is not entitled to damages resulting from his termination.

## II.     Plaintiff Deschamps' Breach-of-Contract Claim:

Defendant NMBHI also argues that "Plaintiff's failure to pursue an appeal of his termination to the State Personnel Board or invoke Union Arbitration procedures necessarily disposes of Plaintiff's claim for breach of contract." **Doc. 5 at 7**. The Court agrees.

As a preliminary matter, the Court notes that it is undisputed that Plaintiff's breach-of-contract claim arises under the Personnel Act, § 10-9-1, and its related rules and regulations. When an employee's contractual claim arises under the Personnel Act and its related rules and regulations, the employee's remedies are limited to those set forth in the act. *Barreras v. State of New Mexico Corr. Dep't*, 2003-NMCA-027, ¶ 1, 133 N.M. 313, 133, 62 P.3d 770, 772. Said another way, an aggrieved employee must first exhaust the administrative remedies under the Personnel Act before proceeding with a claim in district court. *Id.* ¶ 13 ("The [Personnel] Act limits the role of the district court to appellate jurisdiction, as opposed to a fact-finding court of general jurisdiction that would ordinarily apply to breach-of-contract civil actions.")

The relevant administrative remedies under the Personnel Act are as follows: "[a]n employee who is dismissed, demoted, or suspended, may within thirty days after the dismissal, demotion or suspension," (1) appeal to the Personnel board or (2) appeal to an independent arbitrator (if the employer and employee are in a collective bargaining agreement). § 10-9-18(A)(H).

In the present case, the undisputed facts establish that Plaintiff failed to exhaust the Personnel Act's administrative remedies. The Notice of Final Action informed Plaintiff about his right to appeal his dismissal to either the Personnel Board or an independent arbitrator. **Doc. 5 at 51**. Despite this, Plaintiff did not pursue either remedy. Yet, the Court's analysis does not conclude simply because Plaintiff failed to exhaust his administrative remedies. The Court must also determine if the facts of this case justify waiving the requirement, as the Personnel Act's

10

exhaustion requirement is non-jurisdictional. *See Anderson v. State*, 2022-NMSC-019, ¶ 15, 518 P.3d 503, 509 (highlighting that the non-jurisdictional form of exhaustion is flexible, pragmatic, and subject to several judge-made exceptions). [5]

Plaintiff asks the Court to excuse the Personnel Act's exhaustion requirement because Defendant NMBHI allegedly denied him mandatory pre-termination process when it failed to read and consider his timely response to the Notice of Final Action. **Doc. 7 at 19**. In support, Plaintiff cites *Franco v. Carlsbad Mun. Sch.*, 2001-NMCA-042, 130 N.M. 543, 545, 28 P.3d 531, 533 and *Muller v. Vilsack*, No. CV 13-0431 MCA/KK, 2015 WL 13665433, at *1 (D.N.M. Mar. 30, 2015). **Doc. 7 at 19.** [6]

While *Franco* and *Muller* suggest that a court may excuse a plaintiff from exhausting his or her administrative remedies under certain circumstances, including certain violations of due process, such circumstances do not exist in the present case. In both *Franco* and *Muller*, the plaintiffs were prevented from exhausting their administrative remedies through no fault of their own, justifying an excusal of their exhaustion requirements. In *Franco*, the plaintiff, a school custodian, could not exhaust his administrative remedies because he was not adequately informed about his administrative remedies. Specifically, the plaintiff was never informed of his right to attend a crucial school board meeting where the board would vote on his termination, and he could address the allegations against him before the board voted. 28 P.3d at 535. Further, after the board voted to terminate him, the plaintiff was incorrectly informed that there was nothing he could do about his termination, even though he had a right to appeal his termination. *Id.*

---

[5]This Court previously concluded that the Personnel Act's exhaustion requirement is non-jurisdictional in its *Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Partial Motion to Dismiss*. **Doc. 21 at 7–8** ("Because New Mexico courts have repeatedly found a plaintiff's failure to exhaust their administrative remedies can be excusable . . . the Court concludes administrative exhaustion under the State Personnel Act is not jurisdictional.").

[6]Plaintiff also cites New Mexico contract law cases in support of this argument. **Doc. 85 at 19**. However, these cases are unpersuasive as they do not discuss excusing an administrative exhaustion requirement.

In *Muller*, the plaintiff also could not exhaust his administrative remedies under the NMHRA because the board refused to issue a notice of non-determination – the final step necessary for administrative exhaustion under the NMHRA. 2015 WL 13651241 at *6. Despite the plaintiff's persistent efforts, including making two separate requests for a notice of non-determination, the board refused to issue a notice. *Id.*

The circumstances justifying excusal of the exhaustion requirement in *Franco* and *Muller* do not exist in the present case.[7] Here, Plaintiff was not prevented from exhausting his administrative remedies. Plaintiff received the Notice of Final Action which clearly and unambiguously notified him of his available administrative remedies. **Doc. 5 at 58**. Further, there is no evidence suggesting that Plaintiff faced any obstacles in pursuing his administrative remedies. He was not informed that his termination was beyond remedy, and there was no denial or withholding of access to his administrative remedies. Nevertheless, Plaintiff chose not to exhaust his administrative remedies. Given the distinctions in circumstances between this case and the *Franco* and *Muller* cases, the Court remains unconvinced that these cases support an excusal of the exhaustion requirement in this case.

As the *Franco* and *Muller* cases are distinguishable from the instant case and there are no other grounds for waiving the exhaustion requirements, such as futility, the Court dismisses Plaintiff's breach-of-contract claim without prejudice for failure to exhaust.[8] Indeed, "when Plaintiffs base their claim for relief on rights granted by the legislature . . . the State Personnel Act provides the exclusive remedy for Plaintiff's breach-of-contract claims based on that same Act." *Barreras*, 62 P.3d at 775.

---

[7]At 12(b)(6) stage, the Court was unaware that the Notice of Final Action explicitly informed Plaintiff of his administrative remedies under the Personnel Act. This newly revealed fact now distinguishes the *Franco* case from the present case.
[8]*Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.") (original emphasis).

### III.  Plaintiff Deschamps' NMWPA Claim:

Defendant NMBHI moves for summary judgment on Plaintiff's NMWPA claim, asserting that Plaintiff did not engage in protected conduct under the statute. **Doc. 5 at 11–12**. Alternatively, Defendant argues that even if Plaintiff could establish a prima facie NMWPA claim, summary judgment is still warranted because Plaintiff Deschamps' termination was based on a legitimate business purpose, and retaliation was not a motivating factor. **Doc. 8 at 10–12**.

To establish a prima facie NMWPA claim, Plaintiff must establish that (1) Defendant NMBHI was public employer and Plaintiff was a public employee, (2) Plaintiff engaged in activity that is protected by the Act, (3) Defendant NMHBI took an adverse action against Plaintiff, (4) the adverse action was retaliatory in that Plaintiff's engagement in protected activity was a cause of the adverse action, and (5) Plaintiff suffered damages as a result of the retaliatory action. UJI 13-2322.

However, the inquiry of whether Defendant NMBHI is entitled to summary judgment on Plaintiff Deschamps' NMWPA claim, does not end at Plaintiff establishing a prima facie claim. This is because the NMWPA sets forth an affirmative defense:

> It shall be an affirmative defense . . . that the action taken by a public employer against a public employee was due to the employee's misconduct, the employee's poor job performance, a reduction in work force or other legitimate business purpose unrelated to conduct prohibited pursuant to the [WPA] and that retaliatory action was not a motivating factor.

§ 10-16C-4(B). Significantly, New Mexico Courts have not addressed what burden-shifting framework applies to NMWPA claims. Based on the parties written and oral arguments, it appears they believe that the *McDonnell-Douglas* burden-shifting framework[9] applies to Plaintiff's NMWPA claim. The Court disagrees.

---

[9] Under the *McDonnell Douglas* burden-shifting framework, the plaintiff bears the initial burden of establishing a prima facie discrimination case. 411 U.S. 792, 802 (1973). The burden then shifts to the employer to articulate some

Typically, the *McDonnell-Douglas* burden-shifting framework applies when a statute does not set forth its own burden-shifting framework. *Araujo v. New Jersey Transit Rail Operations, Inc.* F.3d 152, 157–58 (3d Cir. 2013) 708 F.3d 152, 157–158 ("[W]hen a burden-shifting framework other than *McDonnell Douglas* is present in a statute, Congress specifically intended to alter any presumption that *McDonnell Douglas* is applicable"); *Trimmer v. U.S. Dept. of Labor*, 174 F.3d 1098, 1101–1102 (10th Cir. 1999) (find that the *McDonnell Douglas* framework was displaced by similar statutory framework in whistleblower provisions of Energy Reorganization Act of 1974). The NMWPA, however, sets forth a burden-shifting framework by explicitly providing for an affirmative defense, with New Mexico courts assigning the burden of proof to the party asserting the affirmative defense. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013 NMSC-032, ¶ 3, 304 P.3d 409.

Given the framework of the NMWPA, the Court finds that the burden-shifting framework that applies to the NMWPA is more analogous to the framework set forth in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). The *Mt. Healthy* framework is as follows.

> [A] First Amendment retaliation plaintiff must prove (using either direct or circumstantial evidence) that her political affiliation was a substantial or motivating factor behind the adverse employment action. If the plaintiff succeeds in proving so much, the defendant-employer may yet prevail by way of affirmative defense if it can prove by a preponderance of the evidence that it would have reached the same adverse employment decision even in the absence of the protected conduct.

*Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016) (internal citations and quotations omitted). Applying a burden-shifting framework like the *Mt. Healthy* framework is appropriate because, like the NMWPA, a First Amendment Retaliation claim can be pursued under a mixed-motive theory—by demonstrating that the protected conduct was a substantial or motivating factor,

---

legitimate, nondiscriminatory reason for his actions. *Id.* Then, the plaintiff has the opportunity to establish that the proffered reason is pretextual. *Id.* at 803.

14

though not the sole factor, in an adverse employment action. *Id.* Additionally, like the affirmative defense in a First Amendment Retaliation claim, an employer can prevail with NMWPA's affirmative defense by proving it would have reached the same adverse employment decision in the absence of the protected conduct. *See Velasquez v. Regents of N. New Mexico Coll.*, 2021-NMCA-007, ¶ 43, 484 P.3d 970, 98 (explaining that the defendant asserting an affirmative defense under the NMWPA "bore the burden of proving that retaliation was not a motivating factor. . . that, if Plaintiff had not engaged in protected conduct, Defendant would have reprimanded her, removed her from her director position, and terminated her nonetheless").

In sum, using the *Mt. Healthy* framework as a guide, a defendant seeking summary judgment on a NMWPA claim can still succeed even if the plaintiff establishes a prima facie NMWPA claim. To do so, the defendant must show that a reasonable factfinder must accept its affirmative defense by establishing that it would have taken the same adverse action in the absence of the protected communication. *See Walton*, 821 F.3d at 1211 (applying the *Mt. Healthy* framework at the summary judgment stage and explaining that under this framework, "a defendant seeking to prevail at the summary judgment state must show a reasonable factfinder either would have to reject the plaintiff's claim on the merits or accept it affirmative defense").

The communication at issue in the instant case is a statement made by Plaintiff to NMBHI's Internal Review Department on December 19, 2019, addressing the death of R.B.:

> "I feel that we actually I know we are short of staff. [R.B.] had been on a level for about a couple of months then he was taken off. I believe he should have been on a level especially after RN Lynn Padilla brought him back from his choking incident."

**Doc. 5 at 36**. While the Court agrees with Defendant NMBHI's argument that Plaintiff Deschamps' alleged protected communication is a self-serving statement intended to mitigate his own culpability rather than expose wrongdoing—and is therefore not protected under the

NMWPA—it assumes, for the sake of analysis, that the communication is protected, and Plaintiff can establish a prima facie case.

Even assuming Plaintiff can establish a prima facie case, summary judgment is warranted. Defendant NMBHI has presented overwhelming and undisputed evidence so that a reasonable factfinder would be compelled to find that NMBHI would have terminated Plaintiff Deschamps even in the absence of his alleged protected communication.

The undisputed evidence establishes that Defendant NMBHI terminated Plaintiff Deschamps for violating NMBHI cell phone policies and negligence resulting in the death of a long-term care resident.

In his voluntary statement to the internal review department, Plaintiff Deschamps admitted to leaving Vanilla Wafer cookies unattended in the activities room while taking a 7-minute personal phone call during preparations for a coffee social activity on the day R.B. died. **Doc. 5 at 34**. According to an investigation conducted by NMBHI's internal review department, R.B. died by choking to death on the Vanilla Wafer cookies that Plaintiff Deschamps left unattended in the Activities Room to take a personal phone call. *Id.* **at 25**. Defendant NMBHI also established that Plaintiff's actions in taking the 7-minute personal phone call violated NMBHI policies, specifically NMBHI policy prohibitions on cellphones in patient care areas and personal phone calls exceeding 5 minutes. *Id.* **at 26, 28**. Additionally, Defendant NMBHI established that Plaintiff's decision to leave the social activity to take a personal phone call conflicted with his job duties as a Recreational Therapist, as it is the responsibility of a Recreational Therapist to supervise residents closely during all activities to ensure safety. *Id.* **at 22**. Therefore, absent Plaintiff's protected communication, Defendant NMBHI had legitimate non-retaliatory purposes for terminating Plaintiff Deschamps entirely independent from his protected communication.

Further, Defendant NMBHI demonstrated that its actions align with its claim that Plaintiff Deschamps was terminated for policy violations and negligence, as his termination closely followed NMBHI's investigation into R.B.'s death and was consistent with the investigation's findings.

Finally, to the extent Plaintiff Deschamps argues that the timing of his termination relative to his alleged protected communication raises a genuine issue of material fact about whether his communication was a motivating factor in NMBHI's decision, the Court disagrees. While temporal proximity between a protected activity and an adverse employment action "is one factor that *may* support an inference of retaliatory motive," in this case, this factor alone is insufficient to support such an inference. *Velasquez*, 484 P.3d at 983 (emphasis added). Temporal proximity alone does not support an inference of retaliatory motive in this case because although Plaintiff's termination occurred shortly after his alleged protected communication, it also occurred shortly after NMBHI's investigation, which determined that R.B. choked to death on Vanilla wafers left unattended by Plaintiff Deschamps. Moreover, Defendant NMBHI provided undisputed evidence—including Plaintiff's own admissions—demonstrating that his termination was based on a legitimate business purpose unrelated to Plaintiff Deschamps' protected communication. Given this evidence, temporal proximity alone is insufficient to raise a genuine issue of material fact regarding any retaliatory motive.[10]

For these reasons, Defendant NMBHI is entitled to summary judgment on this claim because any reasonable jury would conclude based on the overwhelming and undisputed evidence

---

[10]Plaintiff Deschamps also contends in his response that the "single-mindedness" of NMBHI's investigation implies a retaliatory motive. **Doc. 7 at 25**. However, Defendant provides no evidence beyond his personal opinion to support this claim. Plaintiff's subjective opinion of the investigation, without additional supporting facts, is insufficient to create a genuine issue of material fact as to retaliatory motive.

that Defendant NMBHI would nonetheless have terminated Plaintiff Deschamps in the absence of Plaintiff's alleged protected communication.

## CONCLUSION

In conclusion, the Court **DENIES** summary judgment on Plaintiff Deschamps' § 1983 due process claim and **GRANTS** summary judgment on Plaintiff Deschamps' breach-of-contract, NMWPA, and § 1983 First Amendment claims. Accordingly, Defendants' Motion for Summary Judgment (**Doc. 2**) is **DENIED** in part and **GRANTED** in part.

**IT IS SO ORDERED**.

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE